UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

ROBERT JOHNSON,                )
                               )
        Petitioner,             )
                               )
    vs.                        )    Case No. 13-1107-CV-W-HFS-P
                               )
LARRY DENNEY,                  )
                               )
        Respondent.             )

**OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS
AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY**

Petitioner, Robert Johnson, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on October 24, 2013, seeking to challenge his 2008 convictions and sentences for second degree statutory rape and forcible rape, which were entered in the Circuit Court of Jackson County, Missouri.

The petition raises three grounds for relief: (1) that the trial court erred in denying petitioner's motion to suppress the collection of his DNA as evidence pursuant to RSMo 650.055, as this statute violates his rights under the Ex Post Facto Clause of Article I of the U.S. Constitution; (2) that trial counsel was ineffective for failing to call an alibi witness to testify; and (3) that trial counsel was ineffective by failing to advise petitioner that testifying at trial was not mandatory, and instead "advised [him] that he must testify at trial."

Respondent contends that ground 1 is without merit and, alternatively, procedurally defaulted.[1]  Additionally, he contends that grounds 2 and 3 are meritless.

---

[1] The Court finds ground 1 to be procedurally defaulted. Therefore, a discussion of the merits of this ground is not necessary.

# SUMMARY OF THE FACTS

On appeal from the denial of his Mo. Sup. Ct. Rule 29.15 post-conviction relief motion, the Missouri Court of Appeals summarized the facts as follows:

> Johnson was charged with forcible rape and second-degree statutory rape, and was tried before a jury. The testimony was that the victim, a fourteen-year-old female, was forcibly raped by a male assailant sometime around 11:00 p.m. on May 10, 2000, while she and her sister were walking home along Troost Avenue in Kansas City. The victim and her sister testified that the assailant dragged her behind a house, where the sexual assault occurred. After reporting the crime to the police, the victim was taken to a hospital where a rape kit was collected.
>
> In October 2007, the DNA from the rape kit was matched to Johnson, based on an exemplar of his DNA in the State DNA Index System.
>
> At his trial, Johnson testified in his own defense, claiming that he had paid the victim $25.00 for consensual sex. He also testified that he believed that the victim was seventeen at the time, and that she was working as a prostitute.
>
> The jury found Johnson guilty on all charges. The court sentenced Johnson as a prior and persistent offender to concurrent terms of twenty-five years for forcible rape and seven years for statutory rape. On direct appeal, this Court affirmed the convictions and sentences in a *per curiam* order pursuant to Rule 30.25(b). *State v. Johnson*, 303 S.W.3d 169 (Mo. App. W.D. 2010).
>
> Johnson filed a Rule 29.15 motion for post-conviction relief. As amended by Johnson's attorney, the motion raised forty-one claims of ineffective assistance of trial counsel, five claims of ineffective assistance of appellate counsel, and one claim that appellant's convictions violated the protection against double jeopardy. An evidentiary hearing was held, at which the motion court heard testimony from Johnson, his wife Barbara Johnson, his brother-in-law Gaylord Cade, Jr., and his trial counsel. The motion court denied Johnson's motion in its entirety. This appeal follows.

(Doc. No. 9, Ex. 10, pp. 4-5).

Before the state court findings may be set aside, a federal court must conclude that the

state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[2] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## **GROUND 1 – PROCEDURAL DEFAULT**

In ground 1, petitioner asserts that the trial court violated his rights under the Ex Post Facto clause of the U.S. Constitution by not granting his motion to suppress the DNA evidence collected from him as required by RSMo 650.055.

This ground is procedurally defaulted. In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750. Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986). Coleman, 501 U.S. at 748-50.

---

[2] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

A review of the record shows that, although petitioner presented this ground in his amended Rule 29.15 motion, petitioner did not raise it on appeal from the denial of that motion. Therefore, this claim is procedurally defaulted and may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. The Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

Petitioner does not present any valid explanation for why this ground was not pursued on appeal from the denial of his amended Rule 29.15 motion. Therefore, he has failed to demonstrate cause for his procedural default. As a result, we do not consider prejudice. The Court, however, can still reach the merits of his claims if petitioner can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence . . . that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., citing Schlup v. Delo, 513 U.S. 298 (1995). Petitioner fails to make this showing.

Petitioner has failed to show cause for his default of ground 1. He does not show that a manifest injustice will occur if this ground is not reviewed on the merits, and he has failed to meet the Schlup standard for actual innocence. Id. Therefore, federal review of ground 1 is barred.

Ground 1 is denied.

### **GROUNDS 2 & 3 – INEFFECTIVE ASSISTANCE OF COUNSEL**

In ground 2, petitioner contends that trial counsel was ineffective for failing to call an

alibi witness to testify. In ground 3, petitioner contends that trial counsel was ineffective for failing to advise him that he did not have to testify at trial, and for advising him that testifying was mandatory.

In order to succeed on a claim of ineffective assistance of counsel, petitioner must establish that: (1) his counsel's performance was unreasonable as viewed in the totality of the circumstances; and (2) his defense was prejudiced by counsel's action in that there is a reasonable probability that, but for counsel's unprofessional acts, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694-95 (1984); Schaeffer v. Black, 774 F.2d 865, 867 (8th Cir. 1985). Reasonably effective assistance of counsel may be defined as the skill and diligence that a reasonably competent attorney would exercise under similar circumstances. See, e.g., Strickland v. Washington, 466 U.S. at 687-90. Judicial scrutiny of counsel's performance must be highly deferential, id. at 689, and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

On appeal from the denial of his Rule 29.15 motion, the Missouri Court of Appeals disposed of petitioner's claims as follows:

### Standard of Review

> A motion court's denial of a post-conviction motion is reviewed for clearly erroneous findings of fact and conclusions of law. *Weeks v. State*, 140 S.W.3d 39, 44 (Mo. banc 2004); *see also* Rule 29.15(k). "[F]indings [of fact] and conclusions [of law] are clearly erroneous only if, after a review of the entire record, the appellate court is left with a definite and firm impression that a mistake has been made." *State v. Waters*, 221 S.W.3d 416, 418 (Mo. App. W.D. 2006).

### Discussion

Johnson raises two points on appeal. First, he argues that trial

counsel was ineffective for failing to investigate and present evidence that Johnson had an alibi for the time of the alleged rape. Second, he claims that trial counsel was ineffective for forcing him to testify at trial, against his wishes.

The Missouri Supreme Court recently summarized the well-established standards governing such ineffective assistance of counsel claims:

> To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must show by a preponderance of the evidence that his or her trial counsel failed to meet the *Strickland* test in order to prove his or her claims of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 688 (1984). Under *Strickland*, a movant must demonstrate that: (1) his or her counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation, and (2) he or she was prejudiced by that failure. *Id.* at 687.
>
> A movant must overcome the strong presumption counsel's conduct was reasonable and effective. To overcome this presumption, a movant must identify specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance. Trial strategy decisions may be a basis for ineffective counsel only if that decision was unreasonable. Strategic choices made after a thorough investigation of the law and the facts relevant to plausible opinions are virtually unchallengeable.
>
> To establish the prejudice requirement of *Strickland*, a movant must prove prejudice. Prejudice occurs when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Johnson v. State*, No. SC91787, 2012 WL 5921199, at *2 (Mo. banc Nov. 20, 2012) (other citations and internal quotation marks omitted). These general principles govern each of the arguments Johnson raises in this appeal.

# I.

Johnson first argues that his counsel was ineffective for failing to investigate his whereabouts at the time of the rape, and to identify and present available witnesses who would have provided Johnson with an alibi.

"In order for a movant to succeed on a claim of ineffective assistance of counsel for failure to call a witness, he must demonstrate that: (1) counsel knew or should have known of the witness' existence; (2) the witness could have been located through a reasonable investigation; (3) the witness would testify; and (4) the testimony of the witness would provide the movant with a viable defense." *Whited v. State*, 196 S.W.3d 79, 82 (Mo. App. E.D. 2006).

"The reasonableness of investigation depends significantly on the information provided by the defendant, and trial counsel can reasonably rely on a defendant's statements (or lack thereof in a situation where he would be expected to speak) in determining what investigation to conduct and what defenses to pursue." *Gleason v. State*, 329 S.W.3d 714, 717-18 (Mo. App. S.D. 2010); *see also*, *e.g. Tabor v. State*, 344 S.W.3d 853, 859 (Mo. App. S.D. 2011) ("Trial counsel can rely on a defendant's statements in investigating a case and developing trial strategy."). *Strickland* itself recognized as much, observing that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." 466 U.S. at 691. Of particular relevance here, prior decisions emphasize that "[d]efense counsel necessarily relies on his client to identify witnesses and is not required to be clairvoyant." *State v. Twenter*, 818 S.W.2d 628, 639 (Mo. banc 1991); *see also, e.g.*, *State v. Owens*, 849 S.W.2d 581, 588 (Mo. App. W.D. 1993) ("A counsel is entitled to rely upon the client to identify witnesses, and cannot be found to have been ineffective for failing to reach a witness counsel does not know exists.").

Johnson alleged that trial counsel was aware of his routine, and that he specifically instructed her to speak with his wife and other family members. He claims that had she done so, she would have discovered that he was residing with his wife's parents at the time of the crime, that a strict 9:00 p.m. curfew was observed at his in-laws' home, and that there was no indication that he had violated the curfew on the night of the rape. Johnson did not testify, however, that he told his attorney that he was with his wife at the time of the alleged rape.

Johnson's wife and brother-in-law testified at the evidentiary hearing that their father was very vigilant concerning compliance with this curfew, and that if Johnson had returned home later, their father would have raised such a commotion that they would have been alerted. Neither witness recalled a time that Johnson had broken curfew, and they therefore concluded that he must have been at home at the time of the alleged rape. Ms. Johnson testified that trial counsel never sought any information from her concerning Johnson's whereabouts at the time of the crime, and that if counsel had done so, she would have provided counsel with information concerning the curfew policy, and regarding other witnesses who could have provided relevant information.

Johnson's trial counsel testified that he never notified her that there were specific witnesses who could supply an alibi defense:

> Q. . . . . Did he ever tell you I want you to speak to my wife about my whereabouts?
>
> A. No.
>
> Q. Did he ever tell you I want you to speak to my brother-in-law, Gaylord Cade Junior?
>
> A. No. That's not even a name that I ever recall hearing.
>
> Q. Okay. Did he tell you that my father-in-law is still alive, can you talk to him?
>
> A. No.
>
> Q. Anyone at all? Did he ever tell you that could come in and give any information whatsoever about where he might have been on May 10th of 2000, in the nighttime instead of at 42nd and Troost?
>
> A. No.

Tr. 96:25-97:14. Trial counsel testified that, despite Johnson's assertions, she did speak with Ms. Johnson on multiple occasions. According to trial counsel, neither Johnson nor his wife ever informed her that Ms. Johnson could provide an alibi for the time

the victim alleged the rape was committed.

The motion court was free to disbelieve the testimony of Johnson and his wife, and instead accept the testimony of trial counsel. "At a post-conviction relief evidentiary hearing, the motion court determines the credibility of the witnesses and is free to believe or disbelieve the testimony of any witness, including that of the Movant." *Gapske v. State*, 358 S.W.3d 566, 569 (Mo. App. S.D. 2012), quoting *Hurst v. State*, 301 S.W.3d 112, 117 (Mo. App. E.D. 2010). Here, the motion court did just that: it found that Johnson "provided no information to his trial counsel to indicate any further investigation was necessary regarding his whereabouts during the night of May 10, 2000," and that "counsel was not given any information by Movant or Ms. Johnson herself indicating that Ms. Johnson would have any relevant information to offer during the trial." In light of the motion court's findings, it did not clearly err in concluding that counsel's "failure to undertake further investigation of the matter was reasonable."

What we have said above is sufficient to dispose of Johnson's claim concerning alibi testimony. We also question, however, whether the testimony of Johnson's wife and brother-in-law would have provided him with a viable defense, or created a reasonable probability of a different outcome, even if counsel had presented it. Johnson's wife and brother-in-law were not able to specifically testify as to his whereabouts at the time of the rape. Instead, they testified to the curfew generally in place at their parents' home at the time of the offenses, and that, in light of this curfew, there would have been a loud commotion if Johnson had tried to return late. They also testified that they did not recall Johnson violating their parents' curfew at any time. Despite such testimony, however, the jury would have been entitled to conclude that Johnson simply did not return to the house following the rape, or that he succeeded in entering the home without alerting his father-in-law or others. The proffered testimony of Ms. Johnson and Cade, even if believed, was not necessarily inconsistent with Johnson's guilt.

During the Rule 29.15 hearing, Johnson testified that, prior to trial, he had informed trial counsel that he did not rape the victim, but that she could have been the same person with whom he paid to have sex earlier in the day. In the argument under his first Point, Johnson contends that his trial counsel was also ineffective because she failed to highlight the discrepancy between his recollections, and the testimony of the victim and her sister, as to the time of his sexual encounter with the victim. Trial counsel testified that she chose not

to challenge the time the sexual encounter occurred for multiple strategic reasons. She believed the jury would find it less plausible that the event took place during the day when the victim and her sister would normally have been in school. She also considered that Johnson's testimony was that he met the victim while waiting for his drug dealer; she believed the jury would be less likely to believe that Johnson was waiting to make a drug purchase during the day. Finally, the sisters both placed the event around the same time, and nothing in trial counsel's investigation led her to question that time, or supplied a reason for the girls to have fabricated the time of the assault. Of course, trial counsel's decision not to highlight the time of the offense was also undoubtedly influenced by the fact that (as she testified, and as the motion court found) Johnson had not informed her of a potential alibi defense for 11:00 p.m., and therefore the time of day would not have appeared critically important, and could have been perceived as a distraction to the jury. Trial counsel testified that she fully informed Johnson of her strategy and that she would not be challenging the time of the offense, and that he did not indicate that he desired a different approach.

The motion court rejected Johnson's claim that counsel should have developed testimony as to the time of his sexual encounter with the victim: "Counsel was not obliged to highlight Movant's claim that his sexual intercourse with the victim occurred during the day and her decision to forego this tactic because she believed it would actually damage his case is not unreasonable in light of all the circumstances of this case." Given counsel's testimony, which the trial court believed, this conclusion was not clearly erroneous.

Point I is denied.

## II.

Johnson's second point argues that trial counsel was ineffective because she forced him to testify against his wishes, and without fully informing him of the risk of such testimony.

Trial counsel admitted at the evidentiary hearing that she advised Johnson to testify based on strategic considerations; she testified, however, that she informed him of the risks of doing so, and made clear that the ultimate decision was his:

> Q. How about did you talk at any point prior to trial about him testifying?

A. Yes.

Q. Can you talk to us about what the conversation was?

A. Based on what Mr. Johnson related to me as his defense, I explained to him that much like a case of self-defense, I can certainly try this case without him testifying but it's difficult to explain to a Jury if he is saying there was a mistake. What that mistake would have been based on without his testimony. I certainly would have made him aware he didn't have to do that, that was his decision, but it limited the defense. I was able to present with regards to both counts. If he was going to claim that he had exchanged sex for money, I had, again, no direct evidence or testimony to support that outside of him.

. . . .

Q. Okay. Now, what did you talk to him about – did you talk to him about this – in order to get this out we have to testify, but did you tell him the risks of testifying?

A. He was aware of the risks of testifying and that was that his priors would come in as well as the fact that either you or Ms. Ashford would have the opportunity to cross-examine him.

. . . .

Q. . . . . How would he have been aware?

A. We would've discussed that. We would've discussed his priors. At least the priors that I was made aware of. There was some that Mr. Johnson did not make me aware of that Ms. Ashford actually made me aware of shortly before trial. But he and I would've discussed that.

>
> Q. Okay. And why do you believe that you would have discussed that with him?
>
> A. He has constitutional rights as a defendant in a criminal case. And that would've been my standard practice to discuss with any defendant looking at proceeding to trial.

Tr. 86:14-87:6; 87:22-88:4; 88:15-89:3. Trial counsel testified that she believed that Johnson was the only person who could support his defense based on her pretrial investigation, as well as depositions she had taken prior to trial.

The motion court found that trial counsel's testimony as to the right-to-testify issue was credible:

> Movant's counsel testified at the Amended Motion hearing that she had advised Movant that he was not required to testify, but that the jury would want to hear from him if he was claiming that the sexual intercourse with the victim was consensual and that he was unaware of her true age. Counsel testified that she had fully advised Movant of the perils of testifying prior to Movant electing to take the stand. Movant was aware of his right not to testify.

LF33.

"[A] defense counsel's criminal trial strategy, even though later proven wrong, does not support a finding of ineffective assistance of counsel" so as to require reversal of a conviction. *Bellew v. State*, 719 S.W.2d 493, 494 (Mo. App. S.D. 1986). Here, defense counsel made a strategic decision to advise Johnson that his case would be stronger if he testified, despite the risks that she explained to him. This was a reasonable strategic decision, given that the DNA evidence strongly suggested that Johnson had in fact had sexual intercourse with the victim, despite his earlier denials to the police; Johnson was in the best position to attempt to explain away the DNA evidence with his account of a consensual sexual encounter for hire. Trial counsel's testimony also refutes Johnson's claim that she *forced* him to testify, despite his contrary wishes. The trial court did not clearly err in rejecting this claim. [f.n. 1].

> [f.n. 1] Although not in his Point Relied On, in his

> argument under Point II Johnson also complains that the trial court did not personally examine him as to his understanding of his right to testify, but instead only asked counsel whether she had discussed Johnson's rights with him. While this argument was not properly preserved in a Point Relied On, we note that a trial court is not *required* to personally question the defendant concerning his right to testify, even though it may be the better practice to do so. *See, e.g.*, *State v. Edwards*, 173 S.W.3d 384, 386 (Mo. App. E.D. 2005) ("A trial court has no duty to inquire from a criminal defendant who remains silent throughout the proceedings regarding whether he or she will testify. However, the more prudent course of action is for the trial court to *voir dire* the defendant, on the record, and outside the presence of the jury."), citing *Allen v. State*, 50 S.W.3d 323, 327 (Mo. App. W.D. 2001).
>
> Point II is denied.
>
> **Conclusion**
>
> We affirm the judgment of the circuit court, which denied Johnson's Rule 29.15 motion for post-conviction relief.

(Doc. No. 9, Ex. 10, pp. 5-12).

The resolution of grounds 2 and 3 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).[3] Applying the <u>Strickland</u>

---

[3] According to the concurrence of Justice O'Connor, joined by four other members of the Court, under the contrary to clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

standard of review to the facts as set forth in the record, the Court finds that counsel was not ineffective.

Grounds 2 and 3 are denied.

## **CERTIFICATE OF APPEALABILITY**

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

## **ORDER**

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.

     /s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:  June 16, 2014.

---

indistinguishable facts. Under the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Courts decisions but unreasonably applies that principle to the facts of the prisoners case. Williams, 529 U.S. at 413, 120 S.Ct. at 1523.